```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION


Debra Love,                       :

        Plaintiff,                :

    v.                            :     Case No.  2:16-cv-490

                                  :     JUDGE MICHAEL H. WATSON
Commissioner of Social Security,        Magistrate Judge Kemp

        Defendant.                :
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Debra Love, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for disability insurance benefits. That application was filed on March 27, 2012, and alleged that Plaintiff became disabled on December 15, 2011.

After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on February 17, 2015. In a decision dated March 11, 2015, the ALJ denied benefits. That became the Commissioner's final decision on April 7, 2016, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on August 8, 2016. Plaintiff filed a statement of errors on September 21, 2016, to which the Commissioner responded on December 8, 2016. Plaintiff filed a reply brief on December 21, 2016, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 55 years old as of the date of the hearing and who has a high school education, testified as

follows.  Her testimony appears at pages 37-47 of the administrative record.

Plaintiff was first asked why she could no longer work.  She replied that she developed what she thought was a migraine headache and that the vision distortion it caused has never gone away.  She had seen a number of specialists but the condition was still unresolved.  It affected her ability to function outside of what she described as her "comfort zone," that is, areas she was familiar with.  She could no longer read or use a computer.

Plaintiff also testified that she was able to provide some care for her mother, who is ill, but it was limited to helping her out of bed or assisting her in getting her walker.

In response to questions from her attorney, Plaintiff testified that she was able to see objects but that they appeared in piecemeal fashion in her field of vision.  She had not driven since the onset of her symptoms.  She was able to do some simple cooking.  She was always accompanied by someone when she went into an unfamiliar environment.  She was able to listen to audio books.

Plaintiff also described her fibromyalgia symptoms.  She said that she had joint and muscle pain.  Activities like standing or dusting increased her pain.  She had received some injections designed to improve her vision but they had not helped.

### III.  The Medical Records

The pertinent medical records are found beginning at page 186 of the administrative record.  The ones which underlie her three statements of error can be summarized as follows.

First, Dr. Epstein reported on an office visit with Plaintiff on March 19, 2012.  Her condition was described as "subjective vision loss" and it had occurred in both eyes.  He could not find any objective basis for Plaintiff's complaint and

said that her examination was entirely normal. He referred her to another specialist and had not seen her since then. (Tr. 186-96). That specialist, R. Chorich, also was unable to find an objective explanation for Plaintiff's symptoms. (Tr. 197). An MRI of the brain done at about the same time showed only sinusitis. (Tr. 243-44).

Dr. McLean was another physician who performed testing in 2012 relating to Plaintiff's vision condition. She reported on May 14, 2012, that a neurological examination was unremarkable and that a lumbar puncture showed normal pressure. Dr. McLean said that she could not "find a neurologic etiology" for the vision complaint. (Tr. 301).

At Dr. Chorich's request, Plaintiff underwent more testing on October 29, 2012. Those tests also produced normal results for both retinal and macular function. However, Dr. Racine, the Director of Electrophysiology testing and Eye Research at Nationwide Children's Hospital, concluded that "today's results would support her decreased vision" although they did not explain it. (Tr. 322).

In November, 2014, Dr. Swedberg performed a consultative orthopedic examination. Plaintiff described the episode from 2012 in which her vision became distorted and also said she had fibromyalgia with associated neck and back pain. A vision exam revealed poor peripheral vision and with her central vision she could read fingers only. She showed some difficulty bending and extending her spine but the physical examination was otherwise normal. Dr. Swedberg's impressions included diminished visual acuity of uncertain etiology, a history of fibromyalgia, and morbid obesity. He said, in the narrative portion of his report, that she could do a "mild amount" of various physical activities and said she had no difficulty sitting, reaching, grasping, and handling objects. As he stated, "her visual acuity is diminished

and this appears to be her primary functional impairment." Dr. Swedberg also completed a questionnaire about Plaintiff's ability to do work-related activities. He did not impose any relevant restrictions on Plaintiff's ability to lift or carry but said that although she could sit, stand, and walk for a total of eight hours in a workday, her sitting was limited to four hours (she could stand for three and walk for one). Also, he did not think she could read very small print or read ordinary book or newspaper print, view a computer screen, or determine differences in shape and color of small objects. Additionally, she could not sort, handle, or use paper files. (Tr. 417-31).

State agency physicians also commented on Plaintiff's physical abilities. Dr. Perencevich concluded on July 31, 2012, that Plaintiff had no severe physical impairments. (Tr. 60). The next reviewer, Dr. Vasiloff, appeared to conclude that the evidence he had before him was insufficient, and suggested that there was a need for additional input. (Tr. 76).

### IV.  The Vocational Evidence

Dr. Michael Klein testified as the vocational expert in this case. His testimony begins at page 47 of the administrative record.

First, Dr. Klein was asked to classify Plaintiff's past relevant work. He said that she worked as a receptionist, which is a sedentary, semi-skilled job.

Next, Dr. Klein was asked questions about a hypothetical person of Plaintiff's age, education, and work experience who could perform at the light exertional level but who could not climb ladders, ropes, or scaffolds and could not balance. The person could, however, occasionally stoop, crouch, kneel, and crawl. He or she could not be exposed to moving machinery or unprotected heights or to humidity and wetness, and could only tolerate occasional exposure to extremes of temperature. Lastly,

the person could not do occupational driving and could only occasionally be exposed to vibration.  Dr. Klein said that such a person could still work as a receptionist.  If, however, the person could not read anything at all, that occupation would be eliminated.

V.  <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 20-29 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016.  Second, he found that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date, which was February 26, 2012.  Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including vision reduction, fibromyalgia, and obesity.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff could work at the light exertional level but could not climb ladders, ropes, or scaffolds and could not balance.  She could occasionally stoop, crouch, kneel, and crawl, could not be exposed to moving machinery or unprotected heights or to humidity and wetness, and could only tolerate occasional exposure to extremes of temperature.  Lastly, she could not do occupational driving and could only occasionally be exposed to vibration.

With these restrictions, the ALJ concluded, based on the vocational testimony, that Plaintiff could still perform her past relevant work as a receptionist.  Consequently, the ALJ decided

that Plaintiff was not entitled to benefits.

### VI. Plaintiff's Statement of Errors

In her statement of errors, Plaintiff raises these issues: (1) the ALJ erred in his analysis of whether Plaintiff's vision impairment met or equaled the criteria in Section 2.02 of the Listing of Impairments; (2) the ALJ did not take Plaintiff's vision impairment into account in making his residual functional capacity finding; and (3) the ALJ did not adequately address all medical opinions in the record.  These issues are considered under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is

supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff has presented three different statements of error, but they overlap substantially, because each of them takes issue with the way in which the ALJ dealt with the opinion of the consultative examiner, Dr. Swedberg.  The Court will therefore discuss her statements of error collectively.

Plaintiff argues, first, that the ALJ should have concluded that her visual impairment met or equaled Section 2.02 of the Listing of Impairments.  That section requires a finding of disability if a claimant's "[r]emaining vision in the better eye after best correction is 20/200 or less."  Plaintiff asserts that there are medical findings in the record that Plaintiff's visual acuity falls below this threshold, and that the ALJ's cursory treatment of this issue - his entire analysis of the Listing of Impairments consists of the sentence that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the Listing - is totally inadequate and does not allow for meaningful judicial review.  Second, she contends that there was enough evidence of deficiencies in her vision - again, primarily Dr. Swedberg's report - to require that some vision-related limitations be incorporated into the residual functional capacity finding.  Lastly, she argues that the ALJ never adequately explained why he rejected those portions of Dr. Swedberg's report which are inconsistent with a finding that Plaintiff can do a range of light work, as the ALJ found, which would allow her to return to her receptionist's job.  The Commissioner, for the most part, argues that any errors made by the ALJ were harmless.

The Court begins its analysis by summarizing exactly what the ALJ had to say about Dr. Swedberg's opinions in the

discussion of residual functional capacity.  After the ALJ reviewed the evidence - most of it from 2012, and with some omissions (for example, the report from Dr. Racine is not mentioned at all) - the ALJ said this:

> In November, 2014, Dr. Swedberg noted the claimant ambulated with a normal gait.  He stated the claimant had no joint abnormalities, no evidence of crepitus or ligamentous laxity over the knee joints, and had grasp strength and manipulative ability (sic) that were well-preserved bilaterally.  Dr. Swedberg reported that claimant had no difficulty sitting, reach (sic), grasping and handling objects.  He stated the claimant was comfortable in both the sitting and supine positions....  The claimant is able to perform a limited range of light work.

(Tr. 28).  Interestingly, when summarizing the same report in that part of the administrative decision dealing with whether Plaintiff had severe impairments, and, if so, what they were, the ALJ provided a different summary of that report, focusing on Dr. Swedberg's statements about Plaintiff's poor peripheral vision with visual field defects and the fact that her visual acuity without corrective lenses was greater that 20/200 bilaterally. (Tr. 23).  The ALJ never mentioned the other limitations about which Dr. Swedberg expressed an opinion and did not indicate the amount of weight assigned to any portion of that opinion.

As to the Listing issue, this Court has said "that when there is some evidence which might support a finding of medical equivalence, even though there is no 'heightened articulation burden' at Step Three, the ALJ has at least a minimal obligation to explain his analysis."  See, e.g., Tipton v. Comm'r of Social Security, 2015 WL 3505513, *5 (S.D. Ohio June 3, 2015), adopted and affirmed 2015 WL 3952347 (S.D. Ohio, June 29, 2015).  Tipton also acknowledged a line of cases holding that if elsewhere in the decision, the ALJ provides an explanation of why a particular impairment is not of Listing severity, that may suffice.  See id.

-8-

at *6.

Here, there is little question that the ALJ's specific discussion of the Listing issue is deficient. In fact, the ALJ simply made a finding without any discussion of the evidence and without any reference to any conceivably applicable section of the Listing. Had the ALJ made some other finding about some of the components of the Listing, such as, in this case, Plaintiff's visual acuity, that may have been enough to demonstrate either compliance with the law or harmless error, but there is no such analysis elsewhere, only a recitation of the findings of the various examiners without any effort to resolve any conflicts or make any determinations.

This error is compounded by the numerous omissions and inconsistencies apparent in the ALJ's decision. To mention just a few, the ALJ made a specific finding that Plaintiff had a severe visual impairment. In reaching that finding, he cited to the reports from many of the doctors who treated Plaintiff for vision problems and also Dr. Swedberg's report. (Tr. 22-23). In discussing Plaintiff's residual functional capacity, the ALJ rejected the opinion of the state agency reviewer, Dr. Perencevich, to the contrary, noting again that "evidence received at the hearing shows the claimant's visual reduction is severe" and that Dr. Perencevich did not have the benefit of hearing Plaintiff's testimony. (Tr. 27). Under the applicable regulations, a severe impairment is one which "significantly" limits a claimants ability "to do basic work activities." 20 C.F.R. §404.1521(a). But despite finding that Plaintiff's visual reduction met this definition, the ALJ did not include any restrictions caused by that visual reduction into his residual functional capacity finding. He also did not explain why he apparently found the statements of the various doctors to be unconvincing even though they almost uniformly concluded that Plaintiff's vision problems, though unexplained, nonetheless

existed.  His particular failure even to acknowledge, in that section of the decision, the visual limitations expressed in Dr. Swedberg's report - even though he summarized them when finding that this impairment was severe - leaves the Court guessing about the reasoning process in which the ALJ engaged.  In short, the Court fully concurs in Plaintiff's assertion that the medical opinion evidence was not adequately dealt with.  When the ALJ's discussion of opinion evidence does not provide either the claimant or the Court with the ability "to follow the adjudicator's reasoning," cf. Social Security Ruling 06-03p, a remand is required.

The Court adds these observations.  It does not appear anywhere in the administrative decision that the ALJ was aware that Dr. Swedberg had limited Plaintiff to a combination of sitting, walking, and standing which could result in a residual functional capacity finding of somewhere between light and sedentary work, and which might or might not permit Plaintiff to work as a receptionist if that job required more than four hours of sitting in a workday.  The ALJ should consider this evidence along with other limitations in Dr. Swedberg's report and, if it is not accepted, provide an explanation for that decision.

It also appears that the ALJ gave great weight to a May 29, 2013 investigation report, summarized at Tr. 72, and to a summary of an initial telephone call to Plaintiff which occurred on May 9, 2012 (Tr. 58).  Plaintiff testified under oath about the former encounter and her statement of errors suggests that the latter could not have involved any observation of her visual ability since it occurred by telephone.  It is an unusual case where this type of evidence is considered to be of almost as much significance as the medical opinions, and if the ALJ intends to rely on it in contravention of medical opinions, it might be helpful to collect additional evidence concerning the credibility of each version of these incidents.

VII. <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

VIII. <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>  
United States Magistrate Judge
